UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| Archer Daniels Midland Company, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. |
| APAC-Tennessee, Inc., | ) |
| Lafarge North America Inc., and | ) |
| Knight Manufacturing Corp., | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW Plaintiff Archer Daniels Midland Company ("ADM"), and for its Complaint against Defendants APAC-Tennessee, Inc. ("APAC"), Lafarge North America Inc. ("Lafarge"), and Knight Manufacturing Corp. ("Knight"), states:

### Parties

1. Plaintiff ADM is a Delaware corporation in good standing with its principal place of business in Decatur, Illinois.

2. Defendant APAC is a Delaware corporation with its principal place of business in Memphis, Tennessee. APAC owns and operates a quarry and barge loading facility on the Mississippi River near Bloomsdale, Missouri.

3. Defendant Lafarge is a Maryland corporation with its principal place of business in Baltimore, Maryland.

4. Defendant Knight is an Illinois corporation with its principal place of business in Rosiclare, Illinois. Knight owns and operates a towboat on the Mississippi River, including the M/V EDWARD RAINS.

**Jurisdiction**

5.	This case arises from damage to and sinking of an ADM barge, AT-148, in the Mississippi River. This Court has subject matter jurisdiction over this matter pursuant to the Court's admiralty jurisdiction under 28 U.S.C. §1333(1), and it is an admiralty and maritime claim within the meaning of Federal Rule of Civil Procedure 9(h).

6.	Venue in this district is proper pursuant to 28 U.S.C. §1391(b)(2) because the injury and related events at issue occurred in this district.

**Background**

7.	ADM entered into a charter party ("shipping contract") with Lafarge on January 7, 2015, whereby ADM would lease or "charter" barges to Lafarge for transporting crushed limestone loaded by APAC into ADM's covered hopper barge, AT-148. A copy of the shipping contract between ADM and Lafarge including the "Terms and Conditions" is attached to this Complaint as Exhibit A (the enlarged version of the "Terms and Conditions" contained in the shipping contract is attached to this Complaint as Exhibit B) and incorporated herein.

8.	On or about June 11, 2015, ADM delivered barge AT-148 to LaFarge for loading at the APAC facility at approximately Mile 135.8 on the Upper Mississippi River.

9.	On June 14, 2015, a harbor boat delivered barge AT-148 to the APAC/Brickeys Stone Terminal, for loading. Based on information and belief, the harbor boat that delivered barge AT-148 was operated by Defendant Knight.

10.	Defendant APAC used massive dump trucks to load 1,541 short tons of limestone into barge AT-148, while it was in the possession and control of Lafarge and APAC, on June 14, 2015.

11. On or about June 14, 2015, the harbor boat "EDWARD RAINS", which is owned and operated by Knight, moved barge AT-148, which had been loaded by APAC, to a fleet located at approximately Mile 135.5 on the Upper Mississippi River.

12. While the towboat M/V EDWARD RAINS was securing barge AT-148 to the fleet, the AT-148 buckled and sank, destroying the barge.

13. The value of barge AT-148 at the time it was delivered for loading was approximately $211,235.

14. ADM paid to have the sunken barge surveyed and removed from the Mississippi River, pursuant to the Rivers and Harbors Act and the Clean Water Act, the cost for which was $340,464.84.

## Count I (Bailment)

Comes Now Plaintiff ADM and for Count I of its Complaint against **Defendants APAC, Lafarge, and Knight** states:

15. ADM realleges and incorporates by reference Paragraphs 1 through 14 of this Compliant.

16. The shipping contract, along with delivery by ADM and acceptance by Lafarge of barge AT-148 on June 11, 2015, created a bailment relationship between ADM (bailor) and LaFarge (bailee). The acceptance of the barge by APAC for loading, and acceptance of the barge by Knight for shifting, created a bailment with each of these respective parties.

17. ADM delivered barge AT-148 to Lafarge and/or APAC and/or Knight in a seaworthy condition.

18. Barge AT-148 sank on June 14, 2015, while in the possession and control of APAC, Lafarge, and/or Knight.

Wherefore, Plaintiff ADM requests judgment against Defendants APAC, Lafarge, and/or Knight in an amount in excess of $551,699.84, plus pre judgment and post judgment interest, and Plaintiff's attorneys' fees and costs, and awarding such other and further relief as the Court deems proper.

### **Count II (Negligence)**

Comes Now Plaintiff ADM and for Count II of its Complaint against **Defendants APAC, Lafarge, and Knight** states:

19.  ADM realleges and incorporates by reference Paragraphs 1 through 18 of this Complaint.

20.  At pertinent times, Defendants were negligent in the following respects:

    (a) Failed to inspect the barge before loading;

    (b) Used large dump trucks that dropped the high density cargo from at least 15 feet into the barge;

    (c) Failed to use the ordinary care of a stevedore when loading the barge;

    (d) Concentrated the high density cargo in the center of the barge;

    (e) Negligently transported the barge after loading; and

    (f) In other respects that will be shown at trial.

21.  The buckling and sinking of AT-148 was proximately caused by Defendants' negligence.

22.  Shortly after the sinking of AT-148, ADM asked Defendants to assist with the salvage operations; specifically to remove the barge and its cargo from the Mississippi River.

23.  Plaintiff ADM removed the barge from the Mississippi River, incurring the following damages as a result of the sinking of AT-148:

(a) $318,333.34 in salvage costs that ADM provided to Defendants;

(b) $22,131.50 in costs of the marine surveyor who assisted in the salvage;

(c) $211,235 as the approximate value of the barge;

(d) Loss of use of the barge;

(e) Other damages that will be shown at trial.

Wherefore, Plaintiff ADM requests judgment against Defendants APAC, Lafarge and Knight in an amount in excess of $551,699.84, plus pre judgment and post judgment interest, and Plaintiff's attorneys' fees and costs, and awarding such other and further relief as the Court deems proper.

### Count III (Breach of Contract)

Comes Now Plaintiff ADM and for Count III of its Complaint against **Defendant Lafarge** states:

24. ADM realleges and incorporates by reference Paragraphs 1 through 23 of this Complaint.

25. ADM and Lafarge entered into a shipping contract (Exhibit A) for the bailment of barge AT-148, which included "Terms and Conditions," attached hereto as Exhibit B.

26. Lafarge's "acceptance of any barge or loading shall be acceptance of all terms and conditions of this agreement." (Ex. B, p. 4, §29).

27. Acceptance of ADM's contract and all its terms occurred when Lafarge accepted the barge on June 11, 2015.

28. Lafarge breached multiple provisions of said shipping contract.

29. The "Terms and Conditions" of the shipping contract provide that Lafarge's acceptance of AT-148 for loading "shall be conclusive evidence that the barge was seaworthy and suitable for the cargo at the time of placement." (Ex. B, p. 1, §7.4).

30. Lafarge breached the shipping contract by failing to load AT-148 in a "prudent and careful manner." (Ex. B, p. 2, §13).

31. The shipping contract contains an indemnity provision obligating Lafarge to indemnify ADM for costs, including damage to the barge, and costs ADM incurred in raising the barge. (Ex. B, p. 4, §27).

32. The indemnity provision is conspicuous and clearly covers the loss of AT-148 and the salvage and related costs incurred by ADM. (Ex. B, p. 4, §27).

33. Lafarge's breach of the shipping contract resulted in damages to ADM, and the indemnity provision obligates Lafarge to indemnify ADM, including:

> (a) Salvage services, the reasonable charges for these services is $318,333.34, which has not been paid by Defendant despite demand;
>
> (b) $22,131.50 – costs of the marine surveyor;
>
> (c) $211,235 – the approximate value of the barge;
>
> (d) Loss of use of the barge;
>
> (e) Other damages that will be shown at trial.

Wherefore, Plaintiff ADM requests judgment against Defendant Lafarge in an amount in excess of $551,699.84, plus pre judgment and post judgment interest, and Plaintiff's attorneys' fees and costs, and awarding such other and further relief as the Court deems proper.

## Count IV (*Quantum Meruit*/Restitution)

Comes Now Plaintiff ADM and for Count IV of its Complaint against **Defendants**

**APAC, Lafarge, and Knight** states:

34. ADM realleges and incorporates by reference Paragraphs 1 through 33 of this Complaint.

35. Defendants violated §10 of the Rivers and Harbors Act, which is embodied in 33 U.S.C. §§ 403 and 404 of the Clean Water Act, by failing to remove the barge from the navigable waterways, despite demand by ADM.

36. ADM provided services from which Defendants benefitted, including salvaging barge AT-148 from the Mississippi River, hiring a marine surveyor to assist in the salvage, and other related costs.

37. Defendants have failed to pay ADM for said services, despite demand.

38. ADM is entitled to recover the reasonable value of said services, which is $340,464.84, in *quantum meruit* or in restitution from Defendants.

Wherefore, Plaintiff ADM requests judgment against Defendants APAC, Lafarge, and Knight in an amount in excess of $340,464.84, plus pre judgment and post judgment interest, and Plaintiff's attorneys' fees and costs, and awarding such other and further relief as the Court deems proper.

TONKIN & MONDL, L.C.
James K. Mondl, EDMO Bar #3883
/x/ James K. Mondl
701 Market Street, Suite 260
St. Louis, MO 63101
Phone: (314) 231-2794
Fax: (314) 231-1481
jmondl@tonkinmondl.com
**ATTORNEYS FOR PLAINTIFF
ARCHER DANIELS MIDLAND COMPANY**